## STEEDMAN v. ROOD CONSTRUCTION CORP., et al.

Industrial Commission.

September 19, 1957.

Danton V. Ferrero, Kelner & Lewis, Miami, for claimant.

Lawrence G. Lally, Coral Gables, for the employer and insurance carrier.

ISRAEL ABRAMS, Deputy Commissioner.

Hearings were conducted by this commissioner in Miami on January 31 and March 28, 1957, the parties having waived the Broward County venue.

Claimant was injured on April 29, 1955 in Broward County in an accident arising out of and in the course of his employment by South Broward Water Co. when he fell from a scaffold, suffering a fracture of his left leg. On or about August 15, 1955, while exercising on his crutches, he fell and fractured his left hip.

At the time of his injury he had an average weekly wage of $120 —making his compensation rate $35 weekly.

He filed claim for payment to his wife for nursing care, reimbursement for medical transportation, a 10% penalty for late payment, and for attorney's fees.

Claimant suffered temporary total disability from the date of the accident until January 15, 1957, when he reached maximum recovery. The carrier duly paid him for temporary disability and continued furnishing medical care through the date of first and final hearing.

At the hearing it was the opinion of Dr. Kushner, the attending orthopedist, that he reached maximum recovery on January 15, 1957, and had a functional disability of 60% of the body. This was the first notice received by the carrier of a permanent partial rating by the attending physician.

The carrier was allowed 14 days to examine the claimant relative to earning capacity loss and take a position as to his permanent partial disability, its previous position being that so long as compensation was being paid at the proper rate it was not compelled to take a stand on permanent partial disability after the maximum recovery date.

The carrier did not take issue with the 60% functional rating— but held fast to the position that so long as payment of compensation was continuing, it was not required to assert to claimant the basis upon which compensation was being paid for permanent disability.

The carrier's position in this respect is contrary to the spirit of the Act. Once a claimant has reached maximum recovery from the effects of his injury, he is entitled to know what his permanent

rating is so that he may know how long he is to receive compensation. Otherwise, he may go along receiving compensation for permanent disability and arise one morning with a check in the mail marked—"Final payment for permanent partial disability."

Under such circumstances a claimant has no opportunity to adjust his economic situation befitting his disability. If a claimant is being paid compensation for permanent disability, he is entitled to be informed of the basis upon which he is being paid at the time when it is determined he has reached his maximum recovery.

With respect to nursing services by claimant's wife, both physicians attending him acknowledged a need for practical nursing— one testified that although nursing was necessary, he never requested it because he thought they were not responsible for payment for such services.

The carrier submits as its defense to payment for nursing services the case of Green v. Maule Industries. That case may be distinguished from the instant case in that five years had elapsed before claim was made and such delay was held prejudicial to the employer, whereas in the instant case claim was made within less than a year from the date services were rendered and, although the necessary forms were not timely filed, claimant's injuries were such that the carrier should have known that such services were necessary. Nothing appears in the record to indicate that lack of notice was prejudicial to the carrier.

Claimant's injuries required the practical nursing care of his wife from May 21 through June 30, 1955, and from August 26, 1955, for eight weeks thereafter. Claimant's wife was not employed at the time of the accident. I find that a reasonable fee for such services is $25 for a seven day week.

I find that claimant should be reimbursed for medical transportation at 7½c per mile for each visit to a physician or hospital not already paid for by the carrier.

The late payment of several compensation checks is excused.

Claimant is a man who seems to possess above normal intelligence who has had a formal education of high school and nearly two years of college at the University of Maryland, and a background of several years in the air conditioning, refrigeration and heating business, both self employed and employed by others. The presumption that the functional disability of 60% of the body is the percentage of earning capacity loss has not been overcome by either party, and I therefore find that as a result of the injuries to

his leg and hip claimant suffers a permanent partial disability of 60% loss of earning capacity.

I find that $1,000 is a reasonable fee for claimant's attorneys, Kelner & Lewis.

It is ordered that the employer, South Broward Water Co.— (1) Pay claimant compensation at $35 per week for 60% loss of earning capacity from January 15, 1957. (2) On claimant's behalf pay Mrs. Florence Steedman at $25 per week for nursing services beginning May 21 through June 30, 1955, and from August 26, 1955, for eight weeks thereafter. (3) Reimburse claimant for medical transportation at 7½c per mile. (4) Pay claimant's attorneys, Kelner & Lewis, $1,000 for their services. (5) Pay all costs in this proceeding. The claim for penalties is denied.